Ruffin, Chief Justice.
 

 The case does not involve the question, what operation is to be given here to a parol gift of slaves made in Virginia. If it did, there would be no hesitation in sa-ying, that if it were effectual there, it would also be so here. But the instruction to the jury and the exception, both suppose the slaves to have been expressly loaned originally; and upon that supposition, it was laid down that the defendant did not get the title by his pur-case at execution sale in this state.
 

 The correctness of that proposition cannot be controverted upon any general principle of the law of contracts, as established in any country. Merely by force of the contract, an owner does not part from the title of his property by hiring or lending it. He may, however, lose it by a bailment under such circumstances as are deceptive on third persons, who would be injured if the property should not be liable on the contracts of the bai-lee. On this latter ground, the exception in this case is founded.
 

 By a statute of Virginia, it is enacted that a pretended verbal loan of goods to any person with whom possession •shall have remained by the space of five years, without being honestly resumed, shall be taken as against the creditors of such possessor, to be fraudulent, and that the property is with the possession. The question is, whether a possession by the borrower for five years, begun in Virginia and completed in North Carolina, is to be deemed, in the Courts of this state, to be fraudulent as against his creditors. On behalf of the defendant, counsel has contended, that the case is within the statute: that its meaning is, that a possession for five years establishes that it was not acquired under a bailment, but under a contract for the absolute property: that it is but one possession ■throughout, and as the statute is conclusive that it was not throughout upon a loan, it must be referred to a contract
 
 *343
 
 at the beginning, for the title as well as the possession: and that the Courts of this state will apply the statute, upon the principle that the
 
 lex loci contractus
 
 ought to govern.
 

 The consideration of the objects and provisions of the statute of Virginia, leads so satisfactorily to the conclusion, that, upon a fair construction, it does not embrace the case at bar, that our judgment may be founded exclusively on that point; without embarrassing ourselves byjinquiring what would be proper, if that statute did extend to it.
 

 In the first place, it cannot be admitted that the act places the liability of the goods to the creditors,of the possessor, upon the ground that the possession was not originally acquired upon a contract of loan, but upon one for the absolute property. If a contract for the property be at all within the purview of the act, as the foundation of the claim of a creditor of the possessor, that contract is not necessarily to be supposed to have been in existence at the time of the change of the possession. The provision is, that when there has been a possession for five years," the absolute property
 
 shall be taken
 
 to. be with the possession.” Why so taken ? Because there has been such long possession. When so taken ? At the completion of that long possession, andnot before. As the possession by the bailee or any under him, establishes the property to be out of the. bailor, then and not before; the period at which the supposed property for the absolute contract was made cannot be carried back to any particular previous point of time. The legislature indeed may suppose that the possession might have begun upon a secret contract for the absolute property. But that is not necessary to the purposes of the act. It is sufficient for the creditor if the property be taken to be in his debtor, at the period at which it is subjected to his debt; which is, at the end of five years. There is no legal necessity against supposing that the contract on which the possession was acquired, was for a loan; and that pending such possession there was a contract, by which the property also was acquired. It follows, even if the statute goes upon the idea that possession proves a contract for the absolute property, that it does hot neces
 
 *344
 
 sarily refer to the commencement of the possession as th© period at which that contract was made; especially in a case which it is proved that the possession begun expressly upon a loan. The possession in this case, therefore, is not evidence that the contract was for the absolute property, at any time anterior to the bringing the slaves into this state. If not, they then belonged to the plaintiff by the law of Virginia; and for that reason, by our law also; and they so remain still, so far as a contract is requisite to divest his title, because no such subsequent contract has been proved.
 

 But in the second place, the statute of Virginia is of a character entirely different from that given to it in the argument. It does not proceed on the idea of a contract for the property, between the former owner and the possessor. If it did, the title would be in the possessor for every purpose; and yet it is so by the statute, only as to creditors and purchasers, and that by reason of fraud. In
 
 Watson
 
 v.
 
 Orr,
 
 3 Dev. Rep. 161, the Court had occasion to construe this statute in reference to this point; and held that it did not affect the parties as between themselves. It is a satisfaction to be now informed, that the Court followed the construction given to the act by the Courts of Virginia. We are then not to inquire what was the contract between the plaintiff and his son-in-law; but whether the creditors under whom the defendant claims, were deceived, or could be deceived by the acts of those persons. To that purpose it is immaterial whether the plaintiff gave or sold the negroes to Lynch or no.t for if the creditors have been deluded into the belief, upon grounds apparently reasonable, that he had, the slaves ought to satisfy them, although they were only lent, and not in fact given or sold. It is in fine, a matter of fraud,/ and not of contract. In that point of view, it seems impossible to say, that the statute covers the case. That part of the possession which occurred in North Carolina, was necessary to complete the period prescribed in the statute; and that part could not be deceptive on those who dealt here with the owner.
 

 By the laws of most countries, the possession of personal
 
 *345
 
 chattels for a considerable time by one, using and treating them as his own, is fraudulent; because it induces the world to deal with the possessor as the visible owner, mi • 1 • • The real owner is regarded as having intended the deceptions which actually occur; and therefore, is justly prohibited from resuming his property, and withdrawing it from the creditors of the possessor, to whom it is justly forfeited, as far as it is necessary for their satisfaction. This is the true principle of laws for the prevention of fraud. Whatever may have been the contract between the parties, and admitting it to have been a loan; yet their overt acts are apparently inconsistent with good faith, and therefore, they establish bad faith, and an intended deception on the rest of the world. The statute under consideration is based upon this principle. If it did not before exist in the law of Yirginia, the statute created it there; and fixes a possession of five years as that which shall constitute or prove the fraudulent intent. It is more probable that it existed as a part of the common law of that state; because, in the absence of legislative enact-, ments to the contrary, possession is the natural evidence of the ownership of chattels, and it is an inference of right reason, that such a possession may deceive, and was intended to deceive. In that case the statute only defined and limited the possession that should be deemed fraudulent. Previously, one for a shorter period might have been held by judges and jurors, sufficient evidence of fraud; but where the statute says that shall be the period, it must be understood to mean that a. shorter possession shall not be deemed fraudulent. It is, therefore,, now fixed at five years, whatever it may have been before. But whether existing anterior to the statute, or created by it, one cannot doubt that the rule proceeds entirely upon the hypothesis, that goods can legally, and do usually,, pass by verbal contract and delivery. It can have no other foundation ;.for if they can pass only by writing, or other notorious ceremony, the naked possession cannot evince an intent to defraud, and cannot in fact be deceptive, since the possession is no evidence-of the existence of the requi,-.
 
 *346
 
 site writing, or other ceremony. An illustrative example is presented in the rule of the English law and our own, respecting land; of which the possession is not evidence of title, unless it be continued adversely so long as to raise a presumption of a conveyance, for the benefit of the possessor as well as his creditors. Possession of land merely, is therefore, no evidence of fraud in any case. When, therefore, the statute enacts that five years’ possession, but nothing short of it, shall be deemed fraudulent, it can mean only such possession as may be had in that state, where there is a presumption of title from the single fact of possession;' for the fraud is an inference solely from the impression made upon the world by the possession as evidence of ownership. If the possession had been for five years in Virginia, a creditor might have a right to satisfaction out of the slaves in this state. That might also be true, although a part of the possession were in another state, provided that in the latter, as in Virginia, possession be also evidence of title. We need not entangle ourselves in those inquiries; for the case before us is essentially different from either of those supposed. If the fraud mentioned in this act, is inferred from the possession in Virginia, because it is there evidence of ownership, it cannot be constituted by a possession of five years, of which part occurred in this state, because here the possession of the bailee is no evidence of title in him, and consequently is no evidence of a fraud on his creditors. By our law this particular species of chattels, slaves, cannot pass by gift, unless it be in writing, proved and recorded. To sustain the policy of our statute containing that provision, the Courts have been obliged to hold, that possession under a loan is not fraudulent against the bailee’s creditors; “ for it would be1 a manifest departure from judicial interpretation to treat as a fraud what the law,” as enacted by the legislature “ sanctions.”
 
 Hill
 
 v.
 
 Hughes,
 
 ante, 1 vol. 336. The case which has actually occurred, is not therefore, within the statute of Virginia. The possession in Virginia did not amount to fraud. That which took place here cannot be connected with it,
 
 *347
 
 so as to constitute the fraud; for all idea of fraud is repelled, when it is known that in this state, no argument of title can be drawn from a possession acquired by loan and therefore, that no person could be deceived by it. The owner could not have intended to defraud persons dealing with his son-in-law, by allowing him to bring the slaves into a state in which possession under a loan is no proof of title or fraud ; and therefore, he is'not within the purview of the act. This will appear the clearer if we advert for a moment to the opposite case. Suppose a loan in this state for an indefinite period, and that the lender allows the slave to be carried into Virginia, and kept there for five years. It seems obvious that the contract here, though valid and fair by our law, would not purge the fraud on creditors in Virginia, arising out of the possession there. It would be a fraud there, because there the possession is deceptive; and the owner ought not to be accessary to the deception. But where the possession does not, and cannot, have that effect, the whole argument fails. Such is the case at bar. No fraud had been perpetrated in Virginia, and the slaves' came here, the plaintiff’s. Since that period he has committed no act of fraud here, by which he could lose them. Judgment affirmed.
 

 PeR Cukiam. Judgment affirmed.